IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| SYMANTEC CORPORATION, a Delaware Delaware corporation; and QUARTERDECK CORPORATION, a Delaware corporation, <br><br>　　　　　　　　Plaintiffs, <br><br>　vs. <br><br>CD MICRO, INC., an Oregon corporation, and VINCENT L. WEBB, an individual, <br><br>　　　　　　　　Defendants. <br><br>Ronald Sticka, U.S. Trustee in bankruptcy for the Estate of CD MICRO, INC., <br><br>　　　　　　　　Third Party Plaintiff, <br><br>　vs. <br><br>UNIK ASSOCIATES, LLC. <br><br>　　　　　　　　Third Party Defendant. | Case No. 02-406-KI (Lead Case) <br> Case No. 04-227-KI <br>　CONSOLIDATED CASES <br><br>　　OPINION |

Stephen S. Ford
Marger Johnson & McCollom, P.C.
1030 S. W. Morrison Street
Portland, Oregon 97205-2626

Lawrence K. Rockwell
Eric Doney
Julie E. Hofer
Ariana Seldman Hawbecker
Donahue Gallagher Woods
300 Lakeside Drive, Suite 1900
Oakland, California 94612-3570

      Attorney for Plaintiff

Steven M. Wilker
David Aman
Tonkon Torp LLP
1600 Pioneer Tower
888 S. W. Fifth Avenue
Portland, Oregon 97204-2099

      Attorney for Defendant UNIK Associates, LLC.

Joseph A. Yazbeck
Robert K. Lau
Yasbeck, Cloran & Hanson, LLC.
1300 S. W. Fifth Avenue, Suite 2750
Portland, Oregon 97223

      Attorney for Third Party Plaintiff

KING, Judge:

In this trademark and copyright infringement action, I entered judgment against Unik Associates, LLC ("Unik") and in favor of Symantec Corporation and Quarterdeck Corporation (collectively, "Symantec"), awarding damages of $632,226. I also entered judgment against Ronald Sticka, United States trustee in bankruptcy for the estate of CD Micro, Inc. ("CD Micro") and in favor of Unik after finding that CD Micro should not prevail on its third party claims.

Finally, I concluded that Symantec was entitled to attorney fees from Unik under the Copyright Act but not for the trademark infringement and counterfeiting claims. Before the court are the Symantec's Motion for Award of Attorneys Fees (#404), Symantec's Motion for Costs (#411), and Unik's Cost Bill (#413).

**LEGAL STANDARDS**

I.    <u>Attorney Fees</u>

In addressing a petition for attorney fees, the court must first determine the lodestar amount by multiplying the number of hours reasonably spent on the litigation by a reasonable hourly rate. <u>Morales v. City of San Rafael</u>, 96 F.3d 359, 363 (9th Cir. 1996), <u>amended on other grounds</u>, 108 F.3d 981 (1997). In calculating the lodestar amount, the court should consider the factors specified in <u>Kerr v. Screen Extras Guild, Inc.</u>, 526 F.2d 67 (9th Cir. 1975), <u>cert. denied</u>, 425 U.S. 951 (1976), that are subsumed in that calculation. <u>Id.</u> at 364 n.9. The factors are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent,[1] (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

<u>Id.</u> at 363 n.8.

---

[1] Although "whether the fee is fixed or contingent" is listed as a factor, the Supreme Court subsequently held that enhancing a fee award on account of contingency is improper. <u>See</u> <u>City of Burlington v. Dague</u>, 505 U.S. 557 (1992); <u>Davis v. City and County of San Francisco</u>, 976 F.2d 1536, 1549 (9th Cir. 1992), <u>vacated in part on other grounds</u>, 984 F.2d 345 (9th Cir. 1993).

Page 3 - OPINION

The factors subsumed in the lodestar calculation, and thus to be considered in determining the number of reasonable hours and the reasonable hourly rate, are: the novelty and complexity of the issues, the special skill and experience of counsel, the quality of the representation, and the results obtained. Id. at 364 n.9. Next, the court must consider the necessity of adjusting the lodestar amount based on the Kerr factors that are not subsumed within the initial lodestar calculation. Id. at 363-64. There is a strong presumption, however, that the lodestar amount is a reasonable fee. Nevertheless, in rare cases, this strong presumption may be rebutted through the application of those factors not subsumed in the lodestar calculation. Id. at 364 n.8.

If a case involves Lanham Act and non-Lanham Act claims, a prevailing party can only recover attorney fees for work related to the Lanham Act claims. Apportionment is not required "if it is impossible to differentiate between work done on claims." Gracie v. Gracie, 217 F.3d 1060, 1069-70 (9th Cir. 2000) (internal quotation omitted). If an exact apportionment is impossible, the court should make some attempt to adjust the fee award to reflect an apportionment unless the court finds that the "claims are so inextricably intertwined that even an estimated adjustment would be meaningless." Id. at 1070. The same approach applies to copyright and non-copyright claims. See The Traditional Cat Ass'n, Inc. v. Gilbreath, 340 F.3d 829, 833 (9th Cir. 2003).

II.  Costs

Under the Copyright Act, "the court in its discretion may allow the recovery of full costs" incurred to prosecute infringement. 17 U.S.C. § 505. Under the Lanham Act, when a party establishes a violation of any right of a registrant of a registered mark, "the plaintiff shall be

entitled, . . . subject to the principles of equity," to recover the costs of the action. 15 U.S.C. § 1117(a).

Fed. R. Civ. P. 54(d)(l) provides, in part: "Except when express provision therefor is made either in a statute of the United States or in these rules, costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs . . . ." This rule is not read "as giving district judges unrestrained discretion to tax costs to reimburse a winning litigant for every expense he has seen fit to incur in the conduct of his case." Farmer v. Arabian Am. Oil Co., 379 U.S. 227, 235 (1964). Expenses which may be taxed as costs against a losing party are enumerated in 28 U.S.C. § 1920:

> A judge or clerk of any court of the United States may tax as costs the following:
>
> (1) Fees of the clerk and marshal;
>
> (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;
>
> (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
>
> (5) Docket fees under section 1923 of this title;
>
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

However, the discretion to grant costs does not include the authority to tax costs beyond those authorized by statute or contract. Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 445 (1987). Thus, the discretion granted under Rule 54(d) allows a court to decline to tax costs,

but does not authorize a court to award excess costs in the absence of a "specific congressional command." Id. at 442.

In Alflex Corp. v. Underwriters Lab., Inc., 914 F.2d 175, 177 (9th Cir. 1990), cert. denied, 502 U.S. 812 (1991), the Ninth Circuit held that the costs of obtaining depositions and copies of deposition transcripts were allowable under 28 U.S.C. § 1920 when the transcripts were reasonably necessary to the defendant's motion for summary judgment. Pretrial transcripts are especially necessary when the case is unusually involved and complex. Independent Iron Works, Inc. v. United States Steel Corp., 322 F.2d 656, 678 (9th Cir.), cert. denied, 375 U.S. 922 (1963). Depositions which were merely useful for discovery are not taxable items. Id.

The fact that items are neither introduced into evidence nor otherwise become part of the official court record does not determine whether that item was necessarily obtained for use in the case. Haagen-Dazs Co., Inc. v. Double Rainbow Gourmet Ice Creams, Inc., 920 F.2d 587, 588 (9th Cir. 1990) (per curiam) (allowing costs for reproducing documents even though documents were not introduced as evidence to support summary judgment motion). This is also true for depositions. Hudson v. Nabisco Brands, Inc., 758 F.2d 1237, 1243 (7th Cir. 1985), overruled on other grounds by Provident Bank v. Manor Steel Corp., 882 F.2d 258 (7th Cir. 1989).

A deposition need not be absolutely indispensable to justify an award of costs. It must only be reasonably necessary at the time it was taken, without regard to later developments that may eventually render the deposition unneeded at the time of trial or summary disposition. Barber v. Ruth, 7 F.3d 636, 645 (7th Cir. 1993). Disallowing costs for depositions not used at trial, however, is within the court's discretion. Wash. State Dept. of Transp. v. Natural Gas Co., 59 F.3d 793, 806 (9th Cir. 1995).

# DISCUSSION

I.  <u>Attorney Fees</u>

When I decided that Symantec was entitled to attorney fees under the Copyright Act but not for the trademark claims, I instructed it to attempt to apportion its fees between the claims. Symantec seeks attorney fees against Unik totaling $430,350.45, which includes time spent litigating copyright claims, time where no allocation between copyright and trademark claims can be made, time for local counsel, and time spent preparing the motions for attorney fees and costs.

One of Symantec's attorneys, Lawrence Rockwell, personally reviewed the billing records and eliminated time spent in duplicated efforts or for other inefficiencies inherent in complex matters where work is performed by a large number of people. Time entries were sorted by the American Bar Associations's Uniform Task-Based Management System Litigation Code Set. Rockwell eliminated time entries which only related to the trademark claims. He concluded that some time was spent in tasks that were too intertwined between the copyright and trademark issues to separate. For example, since the CDs infringed both rights, discovery tasks concerning them cannot be separated. The interview of witnesses is another task that relates to both types of claims and cannot be separated.

Rockwell also concluded that some time entries could not be precisely divided but could be allocated between the two types of claims. He reduced the time spent on dispositive motions, written motions and submissions, and post-trial motions and submissions by 10% to account for the portions of the submissions that related to the trademark claims.

Unik seeks to have fees of no more than $200,000 awarded against it. It contends that I should not award the $18,719.75 sought for time incurred by local counsel because the records

provided are inadequate due to the lack of any explanation of the initials for the timekeepers, lack of any attempt to justify their hourly rates, and lack of an attempt to justify the work performed as reasonable. Unik also argues that the fees of local counsel are duplicative and excessive. As an example, it notes the $1,435 for local counsel to attend the half day trial without making a formal appearance at the trial and not even sitting at counsel table.

I agree with both aspects of this objection. Symantec did not provide sufficient documentation of the time records for local counsel concerning justification for the various hourly rates sought for the five different timekeepers. Further, I also agree that the reasonableness of any fees for local counsel has not been substantiated. Symantec has the right to choose attorneys from out of town. This will cause some duplication of effort, however, that would not be present if local attorneys were used. When I think of the attorneys on this case, I do not recall any interactions with local counsel. Although I acknowledge that many attorneys frequently work "behind the scene" on cases, the time spent by local counsel here has not been justified. I will subtract $18,719.75 from the award.

Unik argues that Symantec did not provide adequate documentation of the hours spent by Donahue Gallagher Woods because the firm repeatedly used block billing, a practice discouraged by this court. After a review of the billing records, I do not agree that Symantec used block billing. Its time entries have sufficient detail to allow me to properly review the amount of time spent on tasks.

Unik contends that Symantec should not recover the full $31,817.30 in fees it incurred prior to April 23, 2004, the date on which I dismissed Bagadia for lack of personal jurisdiction.

It suggests reducing this amount by half, to $15,908.65. This argument is similar to one for time spent on unsuccessful claims. I will deduct $15,908.65 from the award.

Unik argues that the number of hours Symantec seeks to recover far exceeds the hours that reasonably competent counsel would have needed to expend. Unik points to a few examples where two of Symantec's attorneys attended a deposition. Unik also believes the time spent on certain particular tasks is excessive. An example is the 267.5 hours spent between the telephone conference with the court on March 17, 2005 during which the parties informed me that they had reached agreement on actual damages, and the half day trial on April 19, 2005. Unik also notes that Symantec's only trial witness was Kris Bagadia and that I did not award the full amount of statutory damages sought by Symantec.

In comparison, Unik spent $149,819 defending against Symantec and $69,202 successfully defending against CD Micro. Unik contends that the difference is staggering, making the number of hours sought unreasonable. Unik does not challenge the hourly rates sought but does note that its blended hourly rate, including nonlawyer timekeepers, was $217.80 while Symantec's was $273.53.

I am also concerned about the number of hours sought by Symantec. Although counsel was always exceptionally well-prepared, multiple attorneys are frequently not needed. I am also concerned about the difference in blended rates between Unik's and Symantec's teams. That is likely caused by Symantec's choice to seek rates at the 95th percentile for the various experience levels of the team. I conclude that the number of hours and hourly rates sought are unreasonable and reduce the adjusted award ($395,722.05 after the two deductions) by 20 percent. This results in an award of $316,577.64.

II.  Costs

   A.  Symentec versus Unik

Symantec seeks taxable costs of $15,582.41 from Unik under Federal Rule of Civil Procedure 54(d) and an additional $25,806.24 under the Copyright Act and the Lanham Act based on the success of the copyright and trademark claims.

Unik objects to the non-taxable costs except for $1,854.90 in travel expenses incurred for Symantec's counsel's travel to depositions located in Ontario, Los Angeles, and Wisconsin. More specifically, Unik objects to nontaxable costs for computer research, the other travel charges, overnight delivery charges, pro hac vice fees, and long distance telephone and facsimile charges. Unik contends that many of the charges are the result of Symantec's decision to prosecute the case in Oregon with California counsel. It also argues that the use of computer databases for legal research is the modern equivalent of the law library, the cost of which is part of a law firm's normal overhead.

I have discretion under both the Copyright Act and the Lanham Act on whether to award costs. Considering the equities, Symantec is a large successful company who fought vigorously to protect its rights. Unik, although the wrongdoer here, is a very tiny company which has been driven from the wholesale software business. I consider the nontravel costs sought to be part of the overhead of running a law firm or a business. I also agree with Unik's point about some of the charges resulting from Symantec's use of out-of-town attorneys. Accordingly, I will only award the $1,854.90 in nontaxable costs for travel expenses that would have been incurred, even if only local attorneys had prosecuted the action.

Unik does not object to $7,594.86 of the taxable costs but objects to the $7,987.55 for copying costs. Assuming that the cost is $0.20 per page, as is noted for most of the noncolor copies, Unik calculates a total of 32,274 copies made. Unik considers this excessive and argues that Symantec has not shown that this many copies were necessarily obtained for use in the case. Unik objects to the $1,532.75 in color copying charges because the number of color copies and the cost per copy is not documented.

I do not have a problem with the cost per page for the black and white copies and would also have allowed Symantec to recover for some color copies because of their use in comparing the CD labels of the authentic and counterfeit software. There is no way for me to tell, however, how many of the copies are necessarily obtained for use in the case and how many are for the convenience of the attorneys. See Haroco, Inc. v. American Nat. Bank and Trust Co. of Chicago, 38 F.3d 1429, 1441(7th Cir. 1994) (set of copies of discovery documents and pleadings that was for convenience of attorney was noncompensable). Thirty thousand plus copies strikes me as excessive. I decline to award costs for any of the copies. This results in an award of taxable costs of $7,594.86.

B.  CD Micro versus Unik

Unik seeks $5,299.57 in costs incurred in its successful defense against the claims of CD Micro.

CD Micro objects to five of the eight deposition costs (Michael Quirino, David Wu, Brian Austin, Adam Rioux, Leslie Thomas), for a total of $3,273.55.

Unik claims these deposition transcripts, except for Wu, were used at summary judgment as part of the evidence about the source and legitimacy of the disks. Although the Wu transcript

was never filed with the court, Unik claims it was necessarily obtained because Wu is the president of DisCopy Labs, the company Symantec designated as the authorized distributor of the software. CD Micro argues that Unik lost to Symantec in summary judgment on the issue of the legitimacy of the disks. Further, CD Micro argues that the legitimacy of the disks was not a necessary part of Unik's case against CD Micro.

I must agree with CD Micro's argument about the necessity of the deposition costs in Unik's defense against CD Micro. The issues between CD Micro and Unik were indemnification, contribution, and various warranties. The factual analysis turned on the relationship between Bagadia and Webb. I conclude that these deposition costs cannot be awarded against CD Micro. Consequently, I award Unik $2,026.02 in costs against CD Micro.

## CONCLUSION

The Motion of Symantec for Award of Attorneys Fees (#404) is granted. Symantec is awarded $316,577.64 in attorney fees against Unik. Symantec's Motion for Costs (#411) is granted. Symantec is awarded $9,449.76 in costs against Unik. Unik's Cost Bill (#413) is granted. Unik is awarded $2,026.02 in costs against CD Micro.

Dated this    12th    day of August, 2005.

                                                 /s/ Garr M. King
                                               Garr M. King
                                               United States District Judge